FILED IN CHAMBERS
U.S.D.C. - Atlanta

DEC 3 0 2013

By: /s/ [signature], Clerk
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

PETER VISKUP.

CRIMINAL CASE NO.
1:12-CR-263-ODE-JFK

ORDER

This criminal case comes before the Court on objections [Doc. 34] filed by Defendant Peter Viskup ("Defendant") to a Report and Recommendation ("R&R") entered on October 31, 2013, by United States Magistrate Judge Janet F. King [Doc. 30]. Magistrate Judge King recommended this Court deny Defendant's motion to dismiss Count Three of the indictment for lack of personal jurisdiction [Doc. 21],[1] and his motions to dismiss for multiplicity [Doc. 22] and for improper venue, and certified this case ready for trial [Doc. 30 at 14].

For the reasons discussed below, the Court ADOPTS the R&R [Doc. 30] in its entirety.

I. **Background**

The facts in this case are undisputed. On February 8, 2011, a superior court judge signed an order concerning the custody, visitation and child support for K.V., Defendant's child. Under that order, Defendant was not allowed to remove K.V. from the

---

[1] Magistrate Judge King recommended that this motion be denied as moot based on the Government's assurance at the pretrial conference that Count Three will be dismissed. The Court adopts this recommendation.

United States without first providing forty-five days notice to K.V.'s mother.

Defendant and K.V.'s mother had agreed that Defendant would have the child for summer visitation from June 19, 2012 through July 13, 2012. On June 19, 2012, K.V. was delivered to Defendant at his residence.[2]

On June 28, 2012, Defendant was served with a contempt motion alleging violations of the February 9, 2011, order.[3] According to the Government, on or about July 5, 2012, Defendant removed K.V. from the United States by taking a flight from New York to Europe, in violation of the forty-five days notice provision in the child custody order. Defendant was located on the Canary Island "many weeks later" [Docs. 28 & 30].[4]

On August 21, 2012, Defendant was indicted by a federal grand jury with violations of 18 U.S.C. § 1204, the International Parental Kidnapping Crime Act ("IPKCA"). Count One of the indictment charges that on or about July 5, 2012, Defendant removed K.V. from the United States "with the intent to obstruct the lawful exercise of another person's parental rights." Count Two alleges that on or about July 14, 2012, Defendant retained K.V., "(who had been inside the United States) outside of the

---

[2]Defendant's residence is located within the Northern District of Georgia.

[3]There is no indication that the violations alleged in the contempt order are related to the events that give rise to the indictment in the instant case.

[4]According to Defendant's objection, K.V. was not found by the authorities until October 2012 [Doc. 34 at 4].

2

United States with the intent to obstruct the lawful exercise of another person's parental rights" [Doc. 1].[5]

## II. Magistrate Judge King's Recommendations

In her R&R filed October 31, 2013 [Doc. 30], Judge King first considered whether Counts One and Two of the indictment are multiplicitous. After examining the statutory language and exploring Congress' intent in enacting the IPKCA, she concluded that the statute proscribes two distinct, albeit overlapping acts. Accordingly, Judge King found that the charges set forth in Counts One and Two concern two distinguishable violations of the IPKCA and that they are not multiplicitous [Doc. 30 at 6-9].

Judge King next turned to Defendant's motion to dismiss Counts One and Two for improper venue. After concluding that venue is sufficiently alleged in the indictment,[6] Judge King recommended that Defendant's motion for improper venue be denied [Id. at 12-13].

## III. Discussion

### A. *Standard of Review*

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), the Court must conduct a de novo review of those portions of the R&R to which Defendant timely and specifically objected. If there is no specific objection, the

---

[5]Count Three of the indictment charged the Defendant with making a false statement in an application for a passport for K.V. [Doc. 1 at 2]. As stated above, the Government has agreed to dismiss this Count.

[6]As Judge King noted, Counts One and Two allege that the charge offense occurred "in the Northern District of Georgia and elsewhere[.]" [Docs. 1 & 30].

3

Court reviews the R&R for clear error. <u>Tauber v. Barnhart</u>, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (Story, J.)(citing <u>HGI Assocs., Inc. v. Wetmore Printing Co.</u>, 427 F.3d 867, 873 (11th Cir. 2005)).

The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by Magistrate Judge King. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3); <u>United States v. Raddatz</u>, 447 U.S. 667, 673-74 (1980). The Court deems Defendant to have waived his right to request review of any portions of the R&R to which he failed to timely and specifically object. FED. R. CRIM. P. 59(b)(2).

### B. *Defendant's Specific Objections*

In his objections to the R&R filed November 14, 2013, Defendant does not challenge Judge King's recommendation concerning his motion to dismiss Counts One and Two for improper venue [Doc. 23]. Having reviewed Judge King's analysis in the relevant portion of the R&R, this Court finds no clear error and ADOPTS Judge King's recommendation as to this motion [Doc. 23].

Defendant's objections focus exclusively on his motion to dismiss for multiplicity. Specifically, Defendant submits that (1) Congress' intent to create separate offenses under the IPKCA is not clear; (2) Defendant's removal of K.V. from the United States is a kidnapping offense that did not end until K.V. was found; and (3) the government would have to prove that K.V. was removed from the United States for both Counts One and Two of the indictment [Doc. 34].

### C. *Analysis*

4

In relevant part, the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST., AMEND V. A "multiplicitous" indictment, one that charges a single offense in multiple counts, implicates the Fifth Amendment double jeopardy clause in two ways. First, the defendant may receive multiple sentences for the same offense. U.S. v. Langford, 946 F.2d 798, 802 (11th Cir. 1991). Second, a multiplicitous indictment may prejudice a jury by suggesting that defendant has committed multiple crimes instead of just one. Id.

To determine whether an indictment is multiplicitous, courts apply the rule established in Blockburger v. United States, 284 U.S. 299, 304 (1932). The "Blockburger" test provides that "'where the same act or transaction constitutes a violation of two distinct statutory provisions,' cumulative punishment may not be imposed unless 'each provision requires proof of an additional fact which the other does not.'" United States v. Hassoun, 476 F.3d 1181, 1185 (11th Cir. 2007) (citing Blockburger, 284 U.S. at 304).

Thus, the Court must first consider the "'allowable unit of prosecution.'" United States v. Smith, 231 F.3d 800, 815 (11th Cir.2000)(quoting Langford, 946 F.2d at 802). "In identifying the appropriate unit of prosecution, the Court must look to the language of the statute itself." United States v. Song, 934 F.2d 105, 108 (7th Cir. 1991). If the plain language of the statute is ambiguous, the "unit of prosecution" test proceeds to examine congressional intent, as reflected by the statute's legislative history, and asks "[w]hat Congress has made the allowable unit of

5

prosecution under a statute which does not explicitly give the answer." Id.; Bell v. United States, 349 U.S. 81, 81 (1955); United States v. Jones, No. 1:05-CR-617-WSD, 2007 WL 2301420 (N.D. Ga. July 18, 2007)(Duffey, J.).

### 1. *Defendant's First Objection: Congress' Intent*

Defendant argues that the appropriate unit of prosecution under the IPKCA is unclear. 18 U.S.C. § 1204 states:

> Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both.

18 U.S.C.A. § 1204(a).

As Judge King noted, an individual can violate the IPKCA in at least two ways: (1) by removing a child, who is in the United States, from the United States, with the intent to obstruct the other parent's rights; and (2) by retaining a child who had been in the United States outside the United States, with the intent to obstruct the other parent's rights. 18 U.S.C. § 1204(a).

Defendant agrees with this rather obvious reading of the statutory language but submits that it does not reflect Congress' intent that each manner of violating the statute be a separate violation. To support this contention, Defendant cites to cases alleging violations of the IPKCA, in which the defendant was charged with only one violation, even where he or she was alleged to have removed and retained a child or children outside the United States.

The Court rejects this argument. Congressional intent does not turn on the Government's discretion to bring charges. See

6

Ball v. United States, 470 U.S. 856, 859 (1985)("'This Court has long acknowledged the Government's broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case.'")(quoting United States v. Goodwin, 457 U.S. 368, 382 (1982)(reiterating that "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.")(internal quotations omitted).[7]

Defendant further contends that the legislative history of the IPKCA suggests that Congress intended to create a remedy for parents of children who have been kidnapped internationally, rather than to "criminalize each way of violating [the IPKCA] as a separate offense" [Doc. 34]. At the very least, Defendant submits that congressional intent is unclear; thus, any doubt should be resolved in favor of Defendant.

The Court concludes that Congress' intent to create separate violations under the IPKCA which can be alleged in more than one count in the indictment is anything but unclear. The legislative history of the IPKCA informs that Congress enacted the statute to

---

[7]The Court notes, in passing, that Defendant's argument is substantially undermined by United States v. Cummings, 281 F.3d 1046 (D.C. Cir. 2002), a case on which Defendant heavily relies for his third objection. For one, the defendant in that case was charged with both the removal and the retention of his children as two separate offenses alleged in four different counts. Furthermore, the defendant in Cummings did not challenge the indictment but rather Congress' authority to criminalize the "retention" offense. Id. at 1048. After concluding that the retention of a child outside the United States implicates Congress' authority under the Commerce Clause, the United States Court of Appeals for the Ninth Circuit affirmed the defendant's convictions under all counts. Id. at 1051.

"deter the removal of children from the United States to foreign countries in order to obstruct parental rights." H.R. REP. 103-390, at 1 (1993), *reprinted in* U.S.C.C.A.N. 2419, 2419. It confirms that "[t]he offense consists of taking a child from the United States, *or* keeping outside of the United States a child who has been in the United States, with intent to obstruct parental rights." Id. at 3 (emphasis added). Finally, H.R. Rep. 103-390 explains that the statute provides three affirmative defenses, the first of which involves acting under a valid child custody court order "in effect at the time of the offense." Because the time of the offense can differ significantly depending on when the child was removed from the United States, as compared to when it was retained outside the United States, the defense can well be available to a defendant charged with the former offense, yet inapplicable to one charged with the latter violation.

Accordingly, even ignoring the plain language of the IPKCA, its legislative history conclusively demonstrates that Congress intended the unit of prosecution to be (1) the removal of children from the United States; and (2) their retention outside the United States. See United States v. Shahani-Jahromi, 286 F. Supp. 2d 723, 728 (E.D. Va. 2003)("By deterring both the removal of children from the United States to foreign countries and the retention of such children there in order to obstruct parental rights, the IPKCA is directly aimed at furthering this interest.").

### 2. Defendant's Second Objection: Continuing Offense

Defendant next submits that his removal of K.V. from the United States on July 5, 2012 is a continuing offense which does

8

not end until the child is returned. Thus, the fact that he violated the custody order by not returning K.V. to his mother on July 14, 2012 should not give rise to a separate violation of the statute [Doc. 34].

Defendant is correct that "[a] kidnaping, once begun, does not end until the victim is free." United States v. Rodriquez-Moreno, 526 U.S. 275, 281 (1999). The kidnapping in Rodriquez-Moreno occurred in Texas but the defendant later transported the victim to New York, New Jersey and then to Maryland. Id. at 276. The Supreme Court for the United States considered the "continuing" nature of kidnapping to determine the proper venue for trial of the § 924(c) offense with which the defendant was charged. After concluding that venue for the § 924(c) offense was proper in any place in which a part of the underlying offense-the kidnapping--occurred, the Court noted that "speak[ing] of [kidnapping] in discrete geographic fragments" makes no sense. Id. at 281.

"Whether a continuous transaction results in the commission of but a single offense or separate offenses is not dependent on the number of unlawful motives in the mind of the accused, but is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed." United States v. Davis, 730 F.2d 669, 672 (11th Cir. 1984)(holding that different counts in the indictment based on separate false statements in a single loan-fraud scheme are appropriate)(citing Bins v. United States, 331 F.2d 390 (5th Cir.1964), cert. denied, 379 U.S. 880 (1964)).

In the instant case, Defendant was charged with violations of 18 U.S.C. 1204(a) which criminalizes two international kidnapping

9

offenses--i.e., the removal and the retention of children outside the United States. It is undisputed that, if proven, Defendant's removal of K.V. from the United States occurred on July 5, 2012. Defendant's "retention" violation, however, did not begin until July 14, 2012, when Defendant disobeyed the custody court order by not returning K.V. to the child's mother. Thus, the removal of K.V. and the child's retention are "separate and distinct acts [which] could be charged in two different counts of the indictment." Davis, 730 F.2d at 672.

Under Defendant's rationale, an individual, who not only removes a child from the United States but also retains such child outside the United States can *never* be charged with a "retention" violation. Such an absurd result is contradicted by the very case on which Defendant relies for his third objection. See Cummings, 281 F.3d at 1048 (where the defendant was indicted for four violations of the IPKCA based on both his removal and his retention of his two children outside the United States). [8] For these reasons, Defendant's "continuing violation" argument fails.

---

[8] The following hypothetical helps to illustrate the flaws in Defendant's argument. An individual, with the intent to obstruct the lawful exercise of parental rights (1) removes a child outside the United States; (2) then comes back to the United States with the child; (3) then removes the child from the United States again; (4) and retains it until later found outside the United States. By Defendant's logic, the hypothetical defendant would be charged with only one count of removal under the IPKCA because "kidnapping is a continuing offense" [Doc. 34]. Although the Government, in its discretion, can elect to charge the defendant with only one violation of the statute, the IPKCA certainly permits a charge alleged in four separate counts--two for removal and two for retention.

### *3. Defendant's Third Objection: Proof of "Removal?"*

Finally, Defendant asserts that, under both Count One and Two, the Government would have to prove that K.V. was removed from the United States. Defendant builds this argument solely on certain inapposite language in Cummings.

In that case, the Court of Appeals for the Ninth Circuit noted that the defendant could not have retained his children outside the United States "without traveling there by some means of foreign commerce." Id. at 1049. As Defendant acknowledges, however, the court in Cummings addressed the constitutionality of the IPKCA in the context of a challenge to Congress' authority to enact the "retention" provision. Contrary to Defendant's inference, the court did not suggest that a "retention" count would require the Government to prove that the child was removed from the United States.[9]

In the instant case, Count Two would require the Government to prove that (1) Defendant retained K.V. outside the United States; (2) K.V. was formerly in the United States; and (3) Defendant retained K.V. with the intent to obstruct the lawful exercise of the parental rights of the child's mother. See 18. U.S.C. § 1204(a). While it is true that in order to retain a child outside the United States, one must first take the child there, the actual "removal" to the place of retention is not an element of the "retention" offense. See also United States v. Boldin, 772 F.2d 719, 726 (11th Cir. 1985) opinion modified on

---

[9]Notably, the court in Cummings affirmed the defendant's convictions.

denial of reh'g, 779 F.2d 618 (11th Cir. 1986)("substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar.")(citing Iannelli v. U. S., 420 U.S. 770, 785 n.17 (1975)).

IV. **Conclusion**

For the reasons above, the R&R [Doc. 30] is hereby ADOPTED IN ITS ENTIRETY, and Defendant's motions to dismiss for multiplicity [Doc. 22] and for improper venue [Doc. 23] are DENIED. Defendant's motion to dismiss for lack of personal jurisdiction [Doc. 21] is DENIED AS MOOT.

SO ORDERED this 27 day of December, 2013.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE